**LOUISIANA SEAFOOD MNGT. COUNCIL, INC., et al.**

v.

**Murphy J. FOSTER, Jr., Governor, Richard P. Ieyoub, Attorney General, et al.**

No. 96–106.

United States District Court, E.D. Louisiana.

May 16, 1996.

Professor Paul R. Baier, LSU Law Center, Baton Rouge, LA, Robert A. Barnett, Guste, Barnett & Shushan, New Orleans, LA, for Louisiana Seafood Management Council, Inc., John E. Thompson, Eddie Lejuine, Matthew Reagan, Clara Gerica, Todd Stipelcovich, Barry Schaferkotter, David A. Mills, Christon Cheramie, Peter Steven Hotoph, Eugene Hickman, Chad Lay, Lindberg Santini, Ned F. Malley, Jr., Barisich Inc.

Thomas E. Balhoff, Judith Ruth Atkinson, Roedel, Parsons Hill & Koch, Baton Rouge, LA, for Coastal Conservation.

Ronnie J. Berthelot, Edmond W. Shows, Shows, Cohn & Cali, Baton Rouge, LA, Frederick Coller Whitrock, Louisiana Dept. of Justice, Public Protection Division, Baton Rouge, LA, Thomas Michael Landrum, Donald E. Puckett, Laura Heap, Louisiana Dept. of Wildlife and Fisheries, Baton Rouge, LA,

for Murphy J. Foster, Jr., Richard P. Ieyoub, Joe L. Herring, Charles–Clark, Peter Vujnovich, John F. Schneider, Perry Gisclair, Daniel Babin, Joseph P. Cormier, Glynn Carver, Wynton Vidrine, Louisiana Wildlife and Fisheries Commission, Louisiana Department of Wildlife and Fisheries.

## ORDER

PORTEOUS, District Judge.

Before the Court, is defendants' motion to dismiss and/or stay the federal proceedings which was taken under submission after oral arguments on the 9th of May 1996. Having considered the memoranda filed on behalf of the parties, oral arguments by counsel, and the applicable jurisprudence, the defendants' motion to stay the federal proceeding is, hereby,

**GRANTED.**

### I.) FACTUAL BACKGROUND

Plaintiffs' filed their petition and motion for a temporary restraining order ("TRO") on the 11th of January 1996 with this Court. The application for a TRO was denied based on the Court's availability for an expedited preliminary injunction hearing on the 18th of January 1996 and the failure of proof that irreparable harm would be suffered in the interim. The dispute in this case arises from House Bill No. 815 or the Louisiana Marine Resources Conservation Act of 1995, that ultimately became ACT NO. 1316, which amended and reenacted significant portions of La.R.S. § 56. After an abbreviated hearing, a preliminary injunction was issued by this Court enjoining several minor provisions of ACT NO. 1316 on the 29th of February 1996.

Previous to the filing of the federal suit, plaintiffs filed a similar petition in the Nineteenth Judicial District Court of East Baton Rouge Parish (Div. "13") claiming many of the same constitutional infirmities. In the state court suit, plaintiffs sought a TRO, which was granted, a preliminary injunction, which was denied, and a permanent injunction, which remains under submission after a full trial on the merits. Plaintiffs, in both the state and federal proceedings, have filed motions to certify a class of commercial fishermen. Plaintiffs' counsel has conceded that certification of the requested state class would encompass the proposed federal class. Defendants have filed the instant motion arguing that this Court should dismiss the above entitled action based upon the Abstention Doctrine, and in the alternative, should stay the federal proceedings pending the outcome of the state proceedings.

### II.) PULLMAN DEFERRAL[1] DOCTRINE PERMITS COURT TO STAY PROCEEDINGS UNTIL THE STATE COURT'S FINAL DECISION

The parties do not dispute that both courts have subject matter jurisdiction to adjudicate the cases before them. It is not uncommon to find state and federal courts exercising concurrent jurisdiction over the same factual cases, and in most instances, the federal court need not abstain nor enjoin the parallel state proceeding. In a few rare cases, the concerns of comity and federalism dictate otherwise. Federal abstention doctrines are judge-made rules under which the federal courts refuse to decide cases or questions within their statutory jurisdiction. As Justice Powell stated in *Pennzoil v. Texaco*, 481 U.S. 1, 12 fn. 9, 107 S.Ct. 1519, 1526 fn. 9, 95 L.Ed.2d 1 (1987):

> The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes.

The federal courts have found abstention necessary, for example, when the federal action raises difficult questions of state law

---

1. In *Growe v. Emison*, 507 U.S. 25, 32 fn. 1, 113 S.Ct. 1075, 1080 fn. 1, 122 L.Ed.2d 388 (1993), Justice Scalia correctly points out that "we have referred to the Pullman doctrine as a form of 'abstention' ... To bring out more clearly, however, the distinction between those circumstances that require dismissal of a suit and those that require postponing consideration of its merits, it would be preferable to speak of Pullman 'deferral' ".

dealing with a complex regulatory scheme[2], when there is an unsettled question of state law in an area of particular local concern such as eminent domain[3], when exceptional circumstances require the court to abstain based upon duplicate proceedings already commenced in state court[4], and when abstaining allows a state court to interpret a state statute that is subject to an interpretation that will moot or substantially modify the Federal Constitutional question.[5] While defendants argue that all of the above forms of abstention apply to the instant litigation, the Court believes that the latter, Pullman Deferral Doctrine, best suits the current situation.[6]

The Pullman Deferral Doctrine takes its name from the United States Supreme Court case entitled *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In *Pullman*, the Texas Railroad Commission required that sleeping cars on trains always be in the control of a conductor, who was almost always white, rather than a porter, who was almost always African–American. Pullman, the railroads, and the porters challenged the Commission's order in federal court requesting an injunction based upon alleged Texas and U.S. Constitutional infirmities. A Three–Judge federal district court held that the Commission lacked the power under state law to issue the order and the Court never reached the U.S. Constitutional issues. The United States Supreme Court reversed, requiring that the "district court exercise its wise discretion by staying its hands." *Pullman* at 501, 61 S.Ct. at 645. Additionally, the Court stated:

Few public interest have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies, whether the policy relates to the enforcement of the criminal law ... or the final authority of a state court to interpret doubtful regulatory laws of the state. *Pullman* at 501 [61 S.Ct. at 645].

The Pullman Doctrine was further developed in *Harrison v. N.A.A.C.P.*, 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959), where the Court stated:

The principle does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise; it serves the policy of comity inherent in the doctrine of abstention; and it spares the federal courts of unnecessary constitutional adjudication.

After the above two cases, the Pullman Doctrine became synonymous with the broad proposition that a federal court should abstain in cases where a state law or action is being questioned in federal court under the U.S. Constitution when a ruling in state court could moot or substantially change the federal question.

In a strikingly similar case, not cited by counsel, to the one before the Court, *Dubois v. State of Louisiana*, 339 F.Supp. 685 (E.D.La.1972), a Three–Judge district court entered a stay of the federal proceeding based upon the Pullman Deferral Doctrine. The Court in *Dubois* was faced with a class action of shrimp fishermen seeking injunctive and declaratory relief alleging that certain state statutes regulating shrimping in coastal waters, found in La.R.S. § 56, were unconstitutional. Just as in the instant case, plaintiffs filed similar petitions in both state and federal court. In the Court's well reasoned opinion, they specifically point out that the legislation at issue had been drastically revised and, in its current form, had not been ruled upon in either state or federal court. The Three–Judge panel decided to let the state proceeding run its course before the federal court would rule on the constitutional

---

**2.** *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

**3.** *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959).

**4.** *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

**5.** *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

**6.** The Court will not address the potential issue, not raised by counsel, of whether *Wilton v. Seven Falls Co.*, —— U.S. ——, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), applies to the state law portions of this case because it believes that Pullman is more appropriate for deferral of the entire litigation.

issues alleged in the complaint. Given the remarkable similarity between the instant case and *Dubois,* this Court feels compelled to follow the sound reasoning of the Three–Judge panel consisting of Judge Wisdom, Judge Christenberry, and Judge West.

There has been no suggestion by any party that a fair and impartial hearing cannot be had in state court. Significantly, a full permanent injunction trial has been conducted in the state court and the forthcoming judgment will be the first to address the validity of ACT NO. 1316. There is no reason for the Court to believe that abstention in this case will cause any of the parties undue delay or expense. In fact, this Court believes that it may be a waste of judicial and counsel's resources to conduct another permanent injunction trial calling substantially the same witnesses and debating substantially the same issues when at any time the state court may render a decision making the entire trial moot. Additionally, the Court believes that in the interest of comity, the state court should have the first opportunity to address the alleged infirmities in ACT NO. 1316.

Accordingly, it is the Court's view that this is one of those rare cases where a federal court should stay its hand and defer to the Louisiana Judiciary for determination of the legality of a state statute. This determination may or may not require this Court to take further action. Pending the outcome of the state court case, this court retains jurisdiction of the above captioned action and the preliminary injunction issued by this Court remains in effect until further Order of the Court.

**IT IS ORDERED** that all further proceedings in the above captioned case are **STAYED.**

**IT IS ORDERED** that counsel shall notify the Court immediately should this matter be resolved such that the federal issues become moot.

**IT IS ORDERED** that plaintiffs may file to reopen this case when a final decision is reached in the state court proceeding.

**IT IS ORDERED** that this case is **CLOSED** for statistical purposes.